IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| AUDREY URDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11CV685-HEH |
| | ) | |
| PETSMART, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
**(Granting in Part and Denying in Part Defendant's Motion to Dismiss
Part of Complaint, or, in the Alternative, for Partial Summary Judgment)**

This matter is before the Court on Defendant PetSmart Inc.'s ("PetSmart's")

Motion to Dismiss Part of Complaint or, in the Alternative, for Partial Summary

Judgment (Dk. Nos. 7, 9), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

For the reasons set forth herein, the Motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff's Complaint contains the following factual allegations.  The events giving

rise to this litigation center around Plaintiff's employment with PetSmart in Vestal, New

York and Chesterfield, Virginia.  Plaintiff was first employed by PetSmart in New York

from October 2005 until July 2009, at which point she transferred to the Chesterfield,

Virginia store.  Plaintiff's employment with PetSmart was ultimately terminated on July

30, 2010.

Plaintiff began her employment with PetSmart in 2005 as a Pet Care Specialist,

working under Charles Vesseley ("Vesseley"), the store manager in Vestal, New York.

1

According to Plaintiff, Vesseley regularly made inappropriate and sexually explicit comments to Plaintiff from 2005 until she transferred to the Chesterfield, Virginia PetSmart in 2009. As a result of the alleged hostile work environment created by Vesseley, Plaintiff began searching for new employment in 2008, and on July 20, 2009, she transferred to the Virginia PetSmart.

According to Plaintiff, the manager of the Virginia PetSmart, Defendant Matthew Girard ("Girard"), began making "inappropriate and sexually charged comments" to Plaintiff "shortly after" her transfer. (Compl. at ¶ 22.) Additionally, he forcibly touched her approximately five times during the course of her employment and, on one occasion, took pictures of her "while she bent over to clean the floor." (*Id.*) Within the first month of her employment, Plaintiff alleges that Girard offered to escort her home after she closed the store. Instead, Girard drove her to his home and coaxed her inside, where he pushed Plaintiff against a wall and attempted to kiss her. Plaintiff claims that she shoved him off and demanded to leave. The next morning, Girard threatened to cut Plaintiff's work hours if she said anything about the incident. (*Id.* at ¶ ¶ 23–25.)

Following the encounter at Girard's home, Plaintiff provides multiple illustrations of Girard's repeated and allegedly "strategic" harassment. For example, Plaintiff cites three separate occasions that occurred in September and October 2009, where Girard called her into his office and made sexually explicit comments to her. (*Id.* at ¶ 26.) According to Plaintiff, Girard's comments eventually escalated to the level of physical harassment. He continually attempted to hug Plaintiff, and, in several instances, engaged in sexually offensive touching and grabbing. (*Id.* at ¶¶ 34–38.)

2

Although PetSmart operates a confidential "Care Line" for employees to voice anonymous concerns, Plaintiff claims that calls are in fact recorded and accessible to management. Plaintiff learned of this practice directly from Girard in October 2009, when he told Plaintiff "that calls to the Care Line were recorded and 'not really anonymous.'" (*Id.* at ¶ 43.) Furthermore, Plaintiff alleges that Girard "maintained a policy that all complaints [were] forwarded directly to him." (*Id.* at ¶ 47.)

On June 24, 2010, Plaintiff's boyfriend placed an anonymous complaint against Girard on PetSmart's Customer Service Line. Shortly thereafter, Plaintiff contends that Girard questioned Plaintiff about her involvement with the complaint. Ultimately, he informed her that "he would personally handle her, kill her, throw her under a bus, and make her look like a psycho" if she disclosed his alleged sexual harassment. (*Id.* at ¶ 47.) As a result of his purported threats, Plaintiff applied for and was granted a restraining order against Girard. (*Id.*)

In addition, Plaintiff lodged a formal complaint with PetSmart's corporate office on June 25, 2010. (*Id.* at ¶ 50.) A human resources representative for PetSmart informed Plaintiff on July 2, 2010, that she did not have to return to the store until she was ready. (*Id.* at ¶ 52.) On September 1, 2010, Plaintiff testified against Girard in Chesterfield County General District Court, where he allegedly pleaded guilty to assault and battery. (*Id.* at ¶ 53.)

During the course of the court proceeding, Plaintiff claims she discovered that she had been terminated by PetSmart on June 24, 2010, despite the fact that HR representatives had encouraged her not to return to work until she was ready. (*Id.* at ¶

3

54.) Plaintiff subsequently requested documentation of her termination. In response, she received a letter from PetSmart indicating that she had been terminated on July 30, 2010, due to her extended absence. On October 12, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 9.)

Plaintiff's Complaint alleges sexual harassment and retaliation in violation of Title VII, 42 U.S.C. § 2000(e), wrongful discharge, assault and battery, negligent hiring, negligent retention, false imprisonment, and intentional infliction of emotional distress. Both Defendants have answered Plaintiff's Complaint. Defendant PetSmart filed the instant Motion to Dismiss Part of Complaint, or in the Alternative for Summary Judgment. PetSmart seeks dismissal of the portions of Plaintiff's Complaint relating to discriminatory acts occurring prior to her employment in Virginia, Plaintiff's wrongful termination claim, and Plaintiff's negligent hiring claim. Plaintiff has agreed to withdraw her claim for wrongful termination, (Pl.'s Opp. 1 n.1), thus this Court need not address that portion of the Motion.

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

*Bell Atlantic Corp. v. Twombly* amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although Rule 8 does not require "detailed factual allegations," it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555. As Judge Niemeyer noted in *Francis v. Giacomelli*, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

Thus, a complaint containing facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). A complaint achieves facial plausibility when it contains sufficient factual allegations to support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 555 U.S. ___, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. In short, the Court must assume the plaintiff's well-pleaded factual allegations to be true, and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

### III. ANALYSIS

In its Motion, PetSmart moves to dismiss part of Count I of Plaintiff's Complaint, as well as Counts III and V. Specifically, PetSmart asserts that a portion of Plaintiff's

discrimination claim under Title VII of the Civil Rights Act should be dismissed as time-barred.   Additionally, PetSmart argues that the Virginia Human Rights Act ("VHRA") does not apply to PetSmart; therefore, Plaintiff's wrongful termination claim under Count III should be dismissed.   PetSmart also maintains that Plaintiff's negligent hiring claim alleged in Count V should be dismissed in its entirety as barred under the statute of limitations.   Plaintiff concedes that the VHRA does not apply, and Count III should be dismissed.   The Court addresses PetSmart's remaining two arguments in turn.

*A.*

The Commonwealth of Virginia is a deferral state, thus a Title VII claim must be filed with the EEOC within 300 days of a discriminatory act.   *See* 42 U.S.C. § 2000e–5(e)(1) ("[I]n a case of an unlawful employment practice [where the person] has initially instituted proceedings with a State or local agency . . ., such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred."); *see also Saffell v. State Farm Mut. Auto. Ins. Co.*, 202 F. Supp. 2d 475, 477 (E.D. Va. 2002).   In the present case, Plaintiff filed her Complaint before the EEOC on October 12, 2010.

However, while the 300 day statute of limitations applies to discrete acts, abusive or "[h]ostile environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18, 122 S. Ct. 2061, 2073–75 (2002). Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim" and an "employee need only file a charge within . . . 300 days of any act that is

6

part of the hostile work environment." *Id.* at 118. Thus under this "continuing violation" rule

> consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.

*Id.* at 105, 122 S. Ct. at 2068; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) ("The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a hostile work environment claim.")

Nevertheless, PetSmart argues that Plaintiff's claim is based on "two distinct and unrelated groups of purported incidents," rather than just one.[1] (Reply Supp. Def.'s Mot. Dismiss at 2.) According to PetSmart, the first group of incidents occurred in PetSmart's Vestal, New York store and should therefore not be lumped together with those incidents involving Defendant Girard in Virginia. In response, Plaintiff asserts that all of the actions in her Complaint are part of one pattern of discrimination. Thus, all of the alleged actions stretching back to her employment in the New York store should be considered as one unlawful employment practice.

---

[1] In the initial Memorandum in Support of Defendant's Motion to Dismiss, Defendant contends that all harassment occurring more than 300 days prior to October 12, 2010—the date on which Plaintiff filed her EEOC claim—should be time-barred. In the Reply, however, Defendant argues only that the allegations occurring in New York from October 2005 to July 2009 should be dismissed.

In *Morgan*, the Supreme Court affirmed the Court of Appeals' conclusion that the plaintiff's claims constituted one continuing violation where they stemmed from the "same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." 536 U.S. at 120–21, 122 S. Ct. at 2076. The Supreme Court, however, has largely left the outer limits of the continuing violation doctrine undefined.

Similarly, the Fourth Circuit has yet to explicitly "delineate[] what constitutes a 'continuing violation.'" *See Emmert v. Runyon*, No. 98-2027, 1999 WL 253632 at *4 (4th Cir. Apr. 29, 1999). This Circuit, however, has acknowledged the various factors and tests articulated by other circuit courts for determining whether a claimant has suffered from a continuing violation. *Id.* (*citing DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir. 1997); *Berry v. Bd. of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983)). Most notably, the Third, Fifth, Seventh, and Eleventh Circuits have set forth three parameters for consideration. The first factor focuses on the subject matter of the violations and whether the alleged acts involve the same type of discrimination; the second factor looks to the frequency of the acts; and the final factor involves the degree of permanence. Specifically, the third factor assesses whether the acts would trigger the employee's awareness of a duty to assert his or her rights. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001); *Berry*, 715 F.2d at 981; *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002); *Clark v. City of Macon*, 860 F. Supp. 1545, 1550 (M.D. Ga. 1994). Importantly, in applying these non-exhaustive factors, courts have noted that "the particular context of individual employment situations requires a fact-specific inquiry that

cannot easily be reduced to a formula." *Huckabay*, 142 F.3d at 239 (*citing Berry*, 715 F.2d at 981). Thus, the factors merely serve as a starting point for any analysis.

Although the Fourth Circuit has yet to officially employ this test, district courts within this Circuit have found the factors instructive. *See e.g., Douglas v. Dabney S. Lancaster Comty. Coll.*, 990 F. Supp. 447 (W.D. Va. 1997). In *Edwards v. Murphy-Brown, LLC*, for example, the district court merged the three factor test with those factors articulated by the Supreme Court in *Morgan* to ascertain whether the alleged events were part of the same hostile work environment. Specifically, the court looked to: (1) whether the subject matter was similar in nature; (2) whether the events occurred within a concentrated time period; (3) whether the plaintiff had knowledge that he or she had an actionable claim; and (4) whether the same people were involved. 760 F. Supp. 2d 607, 622–25 (E.D. Va. 2011). Although the court stated that the plaintiff's pleading in *Edwards* was vague with respect to the time frame in which the incidents occurred, as well as whether the same individuals were involved, it found that the plaintiff met her burden "when drawing inferences favorable to the non-movant, and viewed through the plausibility standard as required by the Fourth Circuit." *Id.* at 623 (citing *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).

In terms of frequency or time period, the district court in *Edwards* noted that "in order for several events to qualify as part of the same hostile work environment, all of the incidents must be so significantly related to each other as to comprise one unitary and ongoing unlawful employment practice." 760 F. Supp. 2d at 621. The court further clarified, however, that the term "ongoing" does not "require discriminatory conduct each

9

day or week, provided the acts, when viewed in their entirety, compose a unitary hostile work environment." *Id.* Additionally, with respect to whether the same people were involved, the court found that the fact that the timely and untimely alleged events had a "relatively small group of employees in common counsel[ed] in favor of finding that the Plaintiff has alleged one unitary hostile work environment." *Id.* at 624.

In the present case, PetSmart contends that the continuing violation doctrine should not apply to any harassment that occurred in the Vestal, New York store because that harassment involved a different perpetrator, with the conduct occurring during a distinct and separate period of time, as well as at a separate location. While PetSmart's characterization may be true, Plaintiff's Complaint alleges that from 2005 to 2008 "PetSmart allowed Manager Vesseley to remain Store Manager despite the hostile work environment he created," prompting Plaintiff to begin searching for new work beginning in 2008. (Compl. at ¶ 19.) She then remained an employee of the New York PetSmart until she began working at the Virginia PetSmart on July 20, 2009. Furthermore, according to her Complaint, Defendant Girard began to harass Plaintiff "shortly after" she began working at the Virginia PetSmart in July 2009. (*Id.* at ¶ 22.)

Thus, although the time frame and continuity of Plaintiff's allegations regarding events that occurred prior to the 300 day window created by Title VII remain somewhat vague, drawing inferences favorable to the non-movant, and viewed through the plausibility standard as required by the Fourth Circuit, the Court concludes that the Plaintiff has described a set of facts alleging a plausible continuing violation. Specifically, because the Complaint suggests that the harassment occurring in Vestal,

New York contributed to her decision to transfer stores, and then allegedly continued

until the time Plaintiff moved to Virginia, it remains plausible that these events depict a

corporate culture tolerant of sexual harassment, and thus constitute one continuing

violation. Therefore, Defendant PetSmart's Motion to Dismiss this portion of the

Complaint will be denied.

In the alternative, Defendant PetSmart requests that the Court consider matters

outside of the pleadings and treat this motion as one for summary judgment. Summary

judgment is appropriate only where "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A genuine dispute as to a material fact exists if the evidence, when viewed

"in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085,

1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986). At this early stage in the litigation, PetSmart has failed to produce any

evidence that there is no genuine dispute as to the facts underlying the application of the

continuing violation doctrine. Consequently, PetSmart's Motion for Summary Judgment

as to this issue must be denied.

*B.*

Turning next to Plaintiff's negligent hiring claim, PetSmart contends that the

applicable statute of limitations serves as a time-bar to this portion of the Complaint.

Both parties agree that a two-year statute of limitations applies to this case. *See* Va. Code

Ann. § 8.01-248. They differ, however, as to the point in time that the statute of

limitations began to run. PetSmart argues that Plaintiff's claim accrued at the time it hired Defendant Girard, while Plaintiff contends that the statute of limitations began to run at the time Plaintiff suffered an injury. Employing either theory, however, Plaintiff failed to file a timely claim for negligent hiring within the two-year statute of limitations.

According to Plaintiff's construction, "[u]nless otherwise provided by statute, traditional statutes of limitations begin to run, not when a wrongful act is done, but when injury or damage results from it and the cause of action has thus ripened into a right of action." *Roller v. Basic Constr. Co.*, 238 Va. 321, 327 (1989); *see also First Va. Bank-Colonial v. Baker*, 225 Va. 72, 81–83 (1983); *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959 (1981). Thus, in cases where the injury to a plaintiff does not occur contemporaneously with the defendant's wrongful act, the statute of limitations does not start running until the plaintiff actually suffers an injury. *See Roller*, 238 Va. at 327.

Applying this rule to the instant case, the statute of limitations began to run at the time Plaintiff first suffered an injury at the hands of Defendant Girard. According to the Complaint, Plaintiff commenced work at the Virginia PetSmart in July 2009. (Compl. at ¶ 22.) "Within her first month at work, [Defendant] Girard offered to guide [Plaintiff] home" but instead "drove to his residence and essentially forced her to go inside" where he "pushed Plaintiff against the wall and started kissing her neck." (*Id.* at ¶ 23–24.) "The next day, [Defendant] Girard threatened [Plaintiff] that if she said anything about what happened, he would manipulate her schedule so that she would not receive any work hours." (*Id.* at ¶ 25.) According to Plaintiff's Complaint, therefore, she suffered an injury at the time of this first incident in late July or August of 2009, at which point the

statute of limitations began to run.  Yet, Plaintiff did not file her Complaint until October 12, 2011, over two years after the date she allegedly first suffered harassment at the hands of Defendant Girard.  As a result, Plaintiff's negligent hiring claim is barred by the statute of limitations and must be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendant PetSmart's Motion to Dismiss Part of Complaint, or in the Alternative, for Partial Summary Judgment will be granted in part and denied in part.  PetSmart's Motion to Dismiss will be denied as to Plaintiff's claims in Count I of the Complaint.  PetSmart's alternative Motion for Summary Judgment will also be denied as to this portion of the Complaint.  PetSmart's Motion to Dismiss Plaintiff's claims for wrongful termination in Count III and negligent hiring in Count V will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: April 10, 2012
Richmond, VA